UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MACH 4 CONSTRUCTION, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>OPERATING ENGINEERS LOCAL NO. 3,<br><br>　　　　　Defendant.<br>_____<br>OPERATING ENGINEERS LOCAL NO. 3,<br><br>　　　　　Counter-Claimant,<br><br>v.<br><br>MACH 4 CONSTRUCTION, LLC,<br><br>　　　　　Counter-Defendant.<br>_____ | 03:09-CV-00565-LRH-RAM<br><br><u>ORDER</u> |

Presently before the court is Defendant/Counter-Claimant's Motion for Partial Summary Judgment as to Plaintiff/Counter-Defendant's contractual obligations (Doc. #26[1]). Plaintiff/Counter-Defendant filed an opposition (Doc. #30), and Defendant/Counter-Claimant filed a reply (Doc. #31).

//

---

[1] Refers to the court's docket number.

**I.     Facts and Procedural History**

This is a breach of contract action stemming directly from Plaintiff/Counter-Defendant Mach 4 Construction, LLC's ("Mach 4's") contention that it effectively terminated its contractual relationship with Defendant/Counter-Claimant Operating Engineers Local No. 3 ("OE3"). Conversely, OE3 contends that Mach 4 failed to properly terminate its contractual relationship with OE3 and is therefore still bound by the agreements at issue.

OE3 is a union representing members in the state of Nevada. Mach 4 is a construction, excavation, and earthmoving company based in Elko, Nevada. On May 1, 2007, Mach 4 and OE3 executed an Independent Northern Nevada Construction Agreement ("Short Form Agreement"). *See* Doc. # 27-1, Exh. 2, A. Miller Depo. at 18. On May 17, 2007, Mach 4 and OE3 executed an Organizing Agreement, effective May 1, 2007. *See* Doc. # 27-1, Exh. 1, A. Miller Depo. at 15-16. Both agreements explicitly incorporate the Master Agreement for Northern Nevada ("Master Agreement") between the Nevada Chapter of Associated General Contractors of America, Inc. and OE3, except as modified by specific exceptions therein. One such exception in both the Short Form and Organizing Agreements is the specific procedures Mach 4 must follow to terminate its contractual relationship with OE3. The relevant details of each agreement are reviewed in turn below.

The Short Form Agreement incorporates the provisions of the current Master Agreement, with a number of explicit exceptions. Of particular relevance here, Section No. 2 of the Short Form Agreement excludes from incorporation Section 26.03.00 of the Master Agreement. Doc. # 27-1, Exh. 2 at 18. Section 26.03.00 of the Master Agreement, titled "Effective and Termination Dates," states that the Master Agreement "shall be effective July 1, 2003, and shall remain in effect through June 30, 2008." Doc. # 28-2, Exh. B at 4. Section 26.03.00 further provides specific termination procedures by which the Union or the Employer may withdraw from the Master Agreement. *Id.* The termination procedures set forth in Section 26.03.00 differ from those set forth in the Short

2

1  Form Agreement, hence their exclusion.  Section No. 5 of the Short Form Agreement provides
2  alternative termination procedures that replace those set forth in Section 26.03.00 of the Master
3  Agreement.  First, Section No. 5 binds the parties to all of the terms and conditions of future
4  Master Agreements if neither party effectively terminates the agreement.  Doc. # 27-1, Exh. 2 at 18.
5  Second, in the event either party wishes to terminate the Short Form Agreement, Section No. 5
6  states that "they may do so during the period of sixty (60) to ninety (90) days prior to the expiration
7  of any Master Agreement." *Id.*
8      The Organizing Agreement parallels the Short Form Agreement in its exclusion and
9  replacement of the Master Agreement's termination procedures.  Section 6 of the Organizing
10 Agreement states that "[t]he Employer agrees to the terms and conditions of the Master Agreement,
11 except as specifically modified by this Organizing Agreement."  Doc. # 27-1, Exh. 1 at 15.
12 Section 8 of the Organizing Agreement states that the terms and conditions of that agreement shall
13 remain in effect for a period of one year, effective May 1, 2007, unless the parties negotiate a
14 contrary understanding in writing.  *Id.* at 16.  Section 8 also states that the Organizing Agreement
15 shall automatically renew for the duration of any subsequent Master Agreement "unless either party
16 gives written notice not less than sixty (60) days nor more than ninety (90) days before the
17 expiration date of any such Master Agreement."  *Id.*  Thus, like the Short Form Agreement, the
18 termination procedures set forth in the Organizing Agreement explicitly modify and replace the
19 termination procedures set forth in Section 26.03.00 of the Master Agreement.
20     On June 2, 2008, Mach 4 sent a letter to OE3 stating "[a]s of May 1, 2008 all of our
21 contacts with the Union are terminated. . . . We do not wish to resign."  Doc. # 32-1, Exh. A at 2.
22 Prior to the June 2, 2008 letter to OE3, Mach 4 did not provide any written notice to OE3
23 indicating that it wished to terminate either the Short Form or the Organizing Agreement with OE3.
24 Doc. # 27-1, Exh. A, A. Miller Depo. at 11:12-23.
25     Mach 4 initiated this action on September 25, 2009, alleging four claims for relief against
26

3

1  OE3, each of which is based on Mach 4's claim that it effectively terminated its contractual
2  relationship with OE3.  Doc #1.  On February 22, 2010, OE3 filed a First Amended Answer and
3  Counterclaims, alleging that because Mach 4 failed to effectively terminate their contractual
4  relationship with OE3, it breached its contractual obligations under the Master Agreement.
5  Doc #16.  On September 27, 2010, OE3 filed a Motion for Partial Summary Judgement seeking a
6  declaration that Mach 4's termination of its contractual relationship with OE3 was ineffective, such
7  that Mach 4 remains bound under the agreements.  Doc. #26.

**II.    Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001).  For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must

4

point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.   Discussion**

The issue before the court is whether the Master Agreement's June 30, 2008 expiration date, specified in Section 26.03.00 of the Master Agreement, is operative in the Short Form and Organizing Agreements, notwithstanding the fact that Section 26.03.00 is specifically excluded from incorporation under Section No. 2 of the Short Form Agreement. It is undisputed that if the court finds that the operative expiration date of the 2003-2008 Master Agreement is June 30, 2008, it follows that Mach 4's June 2, 2008 letter of termination was not submitted to OE3 within the period designated by the Short Form and Organizing Agreements, rendering Mach 4's termination ineffective.

It is well-established that written contracts shall be regarded as the "sole repository" of the parties' intentions. *N. Assur. Co. of London v. Grand View Bldg. Ass'n*, 183 U.S. 308, 332 (1902). When the language of a labor agreement is clear and specific, "federal courts are uniform in their strict interpretation of such language." *Irwin v. Carpenters Health and Welfare Trust Fund for California*, 745 F.2d 553, 556 (9th Cir. 1984). Evidence that tends to add to or alter the terms of an otherwise clear and unambiguous written contract is inadmissable. *Culver v. Wilkinson*, 145 U.S.

205, 212 (1892). Specifically, permitting a party to introduce evidence of a conversation that took place prior to the execution of the agreements "would entirely abrogate th[e] established rule, that parol evidence is not admissible to contradict or vary a written contract." *Union Mut. Ins. Co. v. Wilkinson*, 80 U.S. 222, 229 (1871).

      The court agrees with OE3 that the Short Form and Organizing Agreements are clear and unambiguous with respect to Mach 4's termination rights and obligations. Both the Short Form and Organizing Agreements explicitly set forth procedures by which either party may effectively terminate the agreements. Specifically, a party must do so between sixty to ninety days prior to the expiration of any Master Agreement. The court also finds persuasive OE3's argument regarding the specificity of the date by which the timeliness of termination notice is to be measured. Though the Short Form and Organizing Agreements do not explicitly provide a specific date for the termination of the Master Agreement, they do make reference to such date, which is easily ascertainable by reference to the Master Agreement itself. In doing so, the Short Form and Organizing Agreements also incorporate the expiration date of future Master Agreements should a party to the agreement wish to terminate at a later date.

      The court does not find merit in Mach 4's argument that the Master Agreement's June 30, 2008 termination date was not incorporated into the Short Form and Organizing Agreements. First, while Section No. 2 of the Short Form Agreement explicitly excludes Section 26.03.00 of the Master Agreement from incorporation, it is clear that the intent of this exclusion was to preclude parties to the Short Form Agreement from employing the termination procedures set forth in Section 26.03.00 of the Master Agreement. Instead, Section No. 5 of the Short Form Agreement clearly and unambiguously sets forth its own termination procedures that differ significantly from those set forth in Section 26.03.00 of the Master Agreement. Second, by specifically referencing the expiration date of any Master Agreement, Section No. 5 of the Short Form Agreement effectively reincorporates the portion of Section 26.03.00 that specifies the June 30, 2008

1  expiration date of the current Master Agreement.  Indeed, compliance with the termination
2  procedures set forth in Section No. 5 of the Short Form Agreement necessarily requires reference to
3  the expiration date set forth in Section 26.03.00 of the Master Agreement because it cannot be
4  found elsewhere.  Thus, the general exclusion of Section 26.03.00 does not preclude reliance on
5  that section in order to determine the expiration date of the Master Agreement for purposes of
6  terminating the Short Form Agreement.

7        There is an even stronger case for finding that the June 30, 2008 Master Agreement
8  expiration date is operative for purposes of terminating the Organizing Agreement.  Unlike the
9  Short Form Agreement, the Organizing Agreement does not specifically modify or exclude Section
10 26.03.00 of the Master Agreement.  Thus, nothing in the Organizing Agreement explicitly
11 precludes reliance on Section 26.03.00 for ascertaining the Master Agreement's expiration date.
12 Furthermore, like the Short Form Agreement, the Organizing Agreement does not otherwise
13 specify an expiration date, necessarily requiring reference to the expiration date set forth in Section
14 26.03.00 of the Master Agreement.

15       Contrary to Mach 4's assertion, the doctrine of estoppel is not available as a defense in the
16 present case.  The required elements of the defense are as follows: "(1) [t]he party to be estopped
17 must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the
18 party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of
19 the true facts; and (4) he must rely on the former's conduct to his injury." *Audit Serv., Inc. v.*
20 *Rolfson*, 641 F.2d 757, 762 (9th Cir. 1981).  The Ninth Circuit has refused to allow the estoppel
21 defense where documentary evidence is clear and unambiguous as to the parties' rights and
22 obligations under an agreement.  *Id.*  In such instances, the party asserting the estoppel knew or
23 should have known the true facts, thereby precluding establishment of the third element of estoppel,
24 which requires ignorance of the true facts.  *Id.*

25       Mach 4 may not rely on its OE3 representative's alleged representation that the Short Form
26

and Organizing Agreements would terminate automatically after one year because it is contrary to the explicit language in each written contract.  In Section No. 5 of the Short Form Agreement, Mach 4 agreed to be bound by the terms and conditions of future Master Agreements.  Similarly, Section 8 of the Organizing Agreement states that this agreement shall "automatically be renewed for the duration of the Union's successor Master Agreement" and "for the duration of any subsequent Master Agreement."  Thus, Mach 4's estoppel argument fails because it knew or should have known the facts, as set forth clearly and unambiguously in the Short Form, Organizing, and Master Agreements.

The court acknowledges that in the now-consolidated base case between Mach 4 and the Trustees of the Northern Nevada Operating Engineers Health and Welfare Trust Fund (Case No. 3:08-CV-00578), the court previously denied summary judgment as to the effectiveness of Mach 4's attempted termination. The court found that a genuine issue of material fact existed as to whether Mach 4 effectively terminated the agreement in accordance with Section 26.03.00 of the Master Agreement.  However, in the base case, neither of the parties identified or briefed the materiality of the Short Form and Organizing Agreements on the operability of Section 26.03.00. In light of the previously-unidentified provisions in both the Short Form and Organizing Agreements that preclude any such reliance on the termination procedures set forth in Section 26.03.00 of the Master Agreement, the court now finds that Mach 4 did not effectively terminate its contractual relationship with OE3.

**IV.    Conclusion**

Because the Short Form and Organizing Agreements are clear and unambiguous as to their reliance on the June 30, 2008 Master Agreement expiration date, the court finds an absence of any genuine issue of material fact as to Mach 4's contractual obligations.  Mach 4 failed to effectively terminate its contractual relationship with OE3 within the designated notice period.  It follows that Mach 4 remains bound by the applicable terms and conditions set forth in the Short Form,

Organizing, and Master Agreements. For the foregoing reasons, the court concludes that there is no genuine issue of material fact as to Mach 4's contractual obligations and that OE3 is entitled to partial summary judgment on this issue.

All of Mach 4's claims are predicated on its contention that it effectively terminated its contractual relationship with OE3 and is therefore no longer bound by the terms and conditions of the Short Form, Organizing, and Master Agreements. Because this court has declared that termination to be invalid, Mach 4 cannot prevail on any of its claims and they shall therefore be dismissed. OE3's remaining counterclaims may proceed in accordance with this order.

IT IS THEREFORE ORDERED that OE3's Partial Motion for Summary Judgment (Doc. #26) is hereby GRANTED as specified in this order.

IT IS SO ORDERED.

DATED this 28th day of June, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE